UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

Eastern District of Kentucky
FILED

JAN 08 2024

AT ASHLAND
Robert R. Carr
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 23-76-DLB

JERRY CALDWELL     PLAINTIFF

v.     **MEMORANDUM OPINION AND ORDER**

DAVID LEMASTER, et al.     DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Jerry Caldwell has filed a *pro se* amended civil rights complaint against federal officials pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See* (Doc. # 10). The Court has granted his motion to proceed *in forma pauperis* by prior Order. *See* (Doc. # 7).

This matter is before the Court to conduct the preliminary screening required by 28 U.S.C. §§ 1915(e)(2), 1915A. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). When testing the sufficiency of the plaintiff's complaint, the Court affords it a forgiving construction, accepting as true all non-conclusory factual allegations and liberally construing its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

1

I.  **FACTUAL BACKGROUND**

In March 2021, Caldwell pleaded guilty in Urbana, Illinois, to being a felon in possession of a firearm. The presentence investigation report noted Caldwell's extensive criminal history. It also noted several past and then-present medical conditions, including diabetes, high cholesterol, high blood pressure, chronic obstructive pulmonary heart disease, chronic bronchitis, hyperlipidemia, and hypertension. Further, a prior injury from 1987 caused Caldwell's right leg to be three inches shorter than his left, requiring him to wear special shoes and use a cane. The trial court sentenced Caldwell to 64 months in prison. *United States v. Caldwell*, No. 2:20-CR-20071-MMM-EIL (C.D. Ill. 2020).[1]

In June 2022, Caldwell filed a motion for compassionate release. (Doc. # 70 therein). Medical records filed into the record showed that in March 2022, Caldwell had developed gangrene from a diabetic foot ulcer, resulting in the eventual amputation of all of his toes on his right foot. (Doc. # 74 therein at 20, 145; Doc. # 77 therein at 2, 5). The trial court denied the motion, noting that medical records established Caldwell's ability to care for himself in the prison environment. (Doc. # 77 therein at 6).

Caldwell's present claims are based upon the assertedly-insufficient medical care leading up to the amputation of his toes. Caldwell has been an insulin-dependent diabetic since 2006. (Doc. # 10 at 2). Caldwell's prior medical providers had been treating his

---

[1] A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). *See also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

2

diabetes with a form of insulin called "Humalog 70/30 Glupizride."[2] *Id.* at 4. Caldwell also reported that Lantus insulin had been prescribed. *See* (Doc. # 1-1 at 110).[3] Caldwell claims that Humalog is a specialized form of insulin, and that "typical" or "standard" insulin had proven ineffective in the past. When he was transferred to FCI-Ashland on December 1, 2021, prison nurses changed Caldwell's prescription to "standard" insulin, and conducted no testing before making the change. *Cf.* (Doc. # 1-1 at 112-116) (Clinical Encounter notes from December 1, 2021).

Caldwell immediately complained and stated that he believed he had high blood sugar because was not getting enough insulin. *Cf.* (Doc. # 1-1 at 110) (Clinical Encounter notes from December 5, 2021). During at least four medical appointments held throughout December 2021, Caldwell variously complained that he was experiencing foot pain, that his A1C and blood sugar levels were unacceptably high, that medical staff did not examine his feet, and that they prescribed increased insulin doses in a manner that posed a substantial risk of death. Caldwell would later refuse to take the insulin prescribed, stating that it was ineffective and "bad for me." When Caldwell requested new orthopedic shoes because his existing ones were worn out, new shoes were ordered in January 2022. (Doc. # 10 at 5-6; #10-1 at 3-6).

Caldwell continued to receive antibiotics and care throughout January and February 2022. However, in early March 2022 he was hospitalized, resulting in the eventual amputations in two separate surgeries. Caldwell received extensive post-

---

[2] This medication is a combination of fast and normal acting insulins, resulting in blood sugar reduction in both the short and intermediate term. *See* https://www.drugs.com/humulin_70-30.html (accessed January 3, 2024).

[3] Lantus is a slow acting insulin that reduces blood sugar over a longer 24-hour period. *See* https://www.drugs.com/lantus.html (accessed January 3, 2024).

3

operative care in the three months following. Nonetheless, he contends that prior to his surgeries medical staff were "unprofessional, negligent, and/or guilty of medical malpractice ...." (Doc. # 10-1 at 6-7).

Caldwell filed a formal grievance with the warden regarding his medical care on May 13, 2022. The warden denied relief, asserting that Caldwell had a history of not taking his medications and eating unhealthy foods from the commissary. Caldwell appealed, but the Mid-Atlantic Regional Office and the Central Office also denied relief. Caldwell completed the grievance process upon the final denial issued on November 22, 2022. See (Doc. # 1-1 at 147-156).

On January 10, 2023, Caldwell filed an earlier civil rights complaint asserting the same claims presented here and naming the same parties as defendants. That case was dismissed on March 22, 2023, on procedural grounds. Caldwell did not seek reconsideration or appeal. *Caldwell v. LeMaster*, No. 0:23-CV-6-DLB (E.D. Ky. 2023).

Caldwell filed the present action three months later, again complaining about the appropriateness and sufficiency of the medical care he was provided beginning on December 8, 2021. See (Doc. # 10 at 4). Specifically, he contends that the "standard" type of insulin that was administered was insufficient, leading to elevated blood glucose levels and the amputation of his toes. See *id.* at 4-7. Caldwell asserts that the defendants violated the Fifth, Eighth, and Fourteenth Amendments; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; 18 U.S.C. § 3553(a)(2)(D); 28 C.F.R. § 40.1 *et seq.* and 28 C.F.R. § 541.1 *et seq.*, and unidentified Program Statements issued by the Bureau of Prisons. (Doc. # 10 at 8). Having thoroughly reviewed the amended complaint, the Court will dismiss it for failure to state a claim.

4

## II. DISCUSSION

The Court assesses the viability of Caldwell's claims in reverse order. First, BOP Program Statements are merely internal agency documents which interpret applicable statutes and regulations; they do not create enforceable rights. *Cf. Perotti v. Quinones*, 488 F. App'x 141, 146 (7th Cir. 2012); *Lewandowski v. Bureau of Prisons*, No. CV1915710RBKAMD, 2021 WL 5937671, at *6 (D.N.J. Dec. 16, 2021); *Mohamed v. Streeval*, No. 0:19-CV-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019) (*citing Reno v. Koray*, 515 U.S. 50, 61 (1995)). Caldwell can therefore state no claim based upon an asserted violation of their terms.

Second, Caldwell refers to two sets of federal regulations. The first, 28 C.F.R. § 40.1 *et seq.*, relates to the BOP inmate grievance procedure. Caldwell briefly complains that MARO did not timely respond to his regional appeal and/or deliver its response to him. *See* (Doc. # 10 at 7). But the response, dated August 5, 2022, was not clearly untimely when permitted extensions of time are considered. *See* 28 C.F.R. § 542.18. Further, the nearly two-month delay in its delivery to Caldwell was likely occasioned by his intervening transfer from FCI-Ashland to the Federal Medical Center in Lexington. *Compare* (Doc. # 1-1 at 149) *with* (Doc. # 1-1 at 151). In any event, Caldwell suffered no prejudice: the regulations expressly permitted him to promptly appeal to the Central Office if the regional appeal was not timely decided, *see id.*, and the Central Office did not reject his eventual appeal as untimely. *See* (Doc. # 1-1 at 155-156). Even if the BOP did not follow its own grievance rules, Caldwell could assert no claim based upon that shortcoming. *Cf. Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."); *Davidson v.*

5

*Federal Bureau of Prisons*, No. 5: 15-351-JMH, 2017 WL 1217168, at *13 (E.D. Ky. Mar. 31, 2017), *aff'd*, 2017 WL 8897005 (6th Cir. Nov. 29, 2017). The second set of regulations referenced by Caldwell, 28 C.F.R. § 541.1 *et seq.*, relate to disciplinary proceedings against inmates. Caldwell does not indicate that any such proceedings transpired here, rendering the regulations irrelevant to his allegations.

Third, Caldwell claims that the BOP's actions contravened 18 U.S.C. § 3553(a)(2)(D). But that statutory subsection imposes no obligation upon the BOP; instead, it is part of the federal sentencing guidelines and lists medical care as one of several factors to be considered by the federal trial court when imposing sentence.

Fourth, Caldwell's claims under the ADA fail twice over. The ADA only proscribes discrimination by public entities, such as a state or local government or agency. *See* 42 U.S.C. § 12131(1). It does not apply to individuals. *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) (holding that "the ADA does not provide for personal liability for defendants sued in their individual capacities."). And Caldwell does not allege any purposeful disability-based discrimination, only negligent medical care. So he states no claim under the ADA. *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) (noting that the ADA proscribes intentional discrimination against a disabled person, not the denial of adequate medical care); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled."); *McNally v. Prison Health Servs.*, 46 F.Supp.2d 49, 58 (D. Me. 1999) (noting distinction between "claims that the medical treatment received for a

6

disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled.").

That leaves only Caldwell's claims asserted under *Bivens*. When a court is faced with several possible constitutional claims based upon the same set of facts, "the proper question is not which Amendment controls but whether either Amendment is violated." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 50 (1993). The Fifth and Fourteenth Amendments are inapposite to Caldwell's allegations: he does not allege either unequal treatment or violation of his due process rights. And the Supreme Court has expressed considerable "reluctance to expand the concept of substantive due process" where there is an "explicit textual source of constitutional protection." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (cleaned up). Here, Caldwell's claims regarding the sufficiency of his prison medical care fall squarely within the reach of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (cleaned up).

However, Caldwell's claim under the Eighth Amendment must be dismissed as untimely. By December 5, 2021, Caldwell had already complained to medical staff that his blood sugar levels were too high following the change in insulin medication. *See* (Doc. # 1-1 at 110). His claims accrued at that time. *See Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (cleaned up). Caldwell had one year from that date to file suit asserting his *Bivens* claims. Ky. Rev. Stat. § 413.140(1)(a); *Homback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013).

7

Because a prisoner must exhaust administrative remedies before filing suit, he is entitled to equitable tolling of the limitations period, at least if he pursued grievance exhaustion diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Here, Caldwell did not file his first inmate grievance until May 2022, more than six months after his first medical complaints arose. Caldwell is therefore not entitled to equitable tolling, having failed to suggest or identify any impediment to timely pursue administrative remedies or file suit.[4] *Cf. Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). And even if the limitations period were tolled during the entire period when Caldwell's formal grievances were pending (from May 13, 2022, to November 22, 2022), he still filed his complaint twelve days too late. Caldwell's complaint is barred by the statute of limitations, and must be dismissed. *Zundel v. Holder*, 687 F. 3d 271, 280-81 (6th Cir. 2012).

Other barriers aside, Caldwell's allegations suggest at most negligence, not the deliberate indifference required to state a claim for violation of the Eighth Amendment. Caldwell himself characterizes his healthcare providers only as "unprofessional, negligent, and/or guilty of medical malpractice ...." (Doc. # 10-1 at 6-7). That is not enough: the Eighth Amendment was not designed to constitutionalize common law torts. Rather, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle* at 104)). To show deliberate indifference to his serious medical needs, a prisoner must establish both the objective and subjective components of such a claim.

---

[4] As noted above, Caldwell actually filed suit regarding his claims three months before he filed this action.

8

*Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). That requirement is readily satisfied here: Caldwell's diabetes – particularly when considered in combination with his high cholesterol, high blood pressure, chronic obstructive pulmonary heart disease, chronic bronchitis, hyperlipidemia, and hypertension – was sufficiently serious to implicate the Eighth Amendment.

However, to satisfy the subjective component Caldwell must show that his health care providers were aware of his medical conditions yet, through action or inaction, consciously chose to disregard serious risks to his health. *Farmer*, 511 U.S. at 834; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing.") (cleaned up); *see also Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994). Here, Caldwell's allegations do not support such an inference, and his medical records demonstrate just the opposite. Promptly after tests in December 2021 showed that Caldwell's blood sugar levels were elevated, prison nurses administered additional insulin and continued to monitor his glucose levels and adjust dosing in response. *See* (Doc. # 1-1 at 3, 5, 10, 12-15, 18, 50, 55, 91-92, 95, 97, 100, 109-110, 115, 138, 142, 144). Caldwell complains that he should have been given a specific kind of insulin, but his disagreement with the treatment specified by his healthcare providers does not mean that they acted with deliberate indifference. *Lyons*

9

*v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (noting that a prisoner's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation."); *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."). This remains true even though at some point in the past a different doctor, evaluating the same patient but with a likely-different set of symptoms and diagnostic metrics, prescribed a specific drug. *Cf. Pyles v. Fahim*, 771 F. 3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). Because Caldwell alleges no facts indicating that the defendants displayed deliberate indifference to his serious medical needs, his complaint fails to state a claim upon which relief may be granted.

## III. CONCLUSION

At bottom, Caldwell's belief that his healthcare providers were negligent or committed medical malpractice might support a claim under state tort law or under the Federal Tort Claims Act, but Caldwell asserts no such claims here. The claims he does assert each fail for the reasons set forth above.

Accordingly, it is **ORDERED** as follows:

1. Caldwell's amended complaint (Doc. # 10) is **DISMISSED** with prejudice.

2. The Court will enter a judgment contemporaneously with this order.

3. This matter is **STRICKEN** from the docket.

This 8th day of January, 2024.



Signed By:
*David L. Bunning* DB
United States District Judge

L:\DATA\ORDERS\PSO Orders\Caldwell 0-23-76 Memorandum.docx

11